CASE NO. 24-1766

IN THE
# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**DEREK CHAPMAN,**

*Plaintiff-Appellant,*

**v.**

**MARYLAND DEPARTMENT OF STATE POLICE,**
**Office of the State Fire Marshall,**

*Defendant-Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MARYLAND AT BALTIMORE**

CORRECTED

**OPENING BRIEF OF PLAINTIFF-APPELLANT**
**DEREK CHAPMAN**

**Dionna Maria Lewis**
**DISTRICT LEGAL**
 **GROUP, PLLC**
**700 Pennsylvania Ave, SE**
**Suite 2098**
**Washington, DC  20003**
**Tele: (202) 486-3478**
**dionna@districtgroup.com**

**Counsel for Appellant -**
 **Derek Chapman**

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>24-1766</u>     Caption: <u>Derek Chapman v. Maryland Department of State Police</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Derek Chapman</u>
(name of party/amicus)

_____

who is <u>        appellant        </u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?     ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?     ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?     ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation?                    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational
victim of the criminal activity and (2) if an organizational victim is a corporation, the
parent corporation and any publicly held corporation that owns 10% or more of the stock
of victim, to the extent that information can be obtained through due diligence.

Signature: _Dionna Maria Lewis_____    Date: ____09/04/2024____

Counsel for: _Derek Chapman_____

Print to PDF for Filing

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………3

JURISDICTIONAL STATEMENT…………………………………4

STATEMENT OF ISSUES…………………………………………5

STATEMENT OF THE CASE………………………………………5

STATEMENT OF FACTS…………………………………………9

SUMMARY OF ARGUMENT……………………………………16

STANDARD OF REVIEW………………………………………16

CONCLUSION……………………………………………………32

## TABLE OF AUTHORITIES

<u>Cases</u>

*Alberti v. Rector and Visitors of the Univ. of Va,*
65 F.4th 151 (4th Cir. 2023) ...............................................................30, 31

*Burgess v. Bowen* , 466 F. App'x 272 (4th Cir. 2012) ............................ 29

*Burlington Northern & Santa Fe Ry. Co. v. White,*
 548 U.S. 53 (2006) ..................................................................................29

*Cole v. Family Dollar Stores of Md.*, Inc., 811 Fed. Appx. 168
(4th Cir. 2020) ......................................................................................... 29

*Cook v. CSX Transp. Corp.*, 988 F.2d 507 (4th Cir. 1993)............22, 23

*EEOC v. Sears Roebuck & Co.*, 243 F.3d 846 (4th Cir. 2001) ............. 17

*Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954
 (4th Cir. 1996) .........................................................................................18

*Gray v. Spillman.,* 925 F.2d 90, 95 (4th Cir. 1991)...............................17

*Haynes v. Waste Connections, Inc.,* 922 F.3d 219 (4th Cir. 2019).......23

*Haywood v. Locke*, 387 F. App'x 355 (4th Cir. 2010)...................22, 25

*Hoyle v. Freightliner, LLC,* 650 F.3d 321 (4th Cir. 2011)............20, 21

*Lee v. Town of Seaboard,* 863 F.3d 323, 327 (4th Cir. 2017)…….........17

*Lettieri v. Equant, Inc.* , 478 F.3d 640 (4th Cir. 2007)............. 30, 31, 32

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792
 (1973)…………………………………………………....……5, 17, 18, 19, 27

*Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992)........................ 22

*Perkins v. Int'l Paper Co.*, 936 F.3d 196 (4th Cir. 2019)....................... 19

*Ray Communs, Inc. v. Clear Channel Communs, Inc.,*
 673 F.3rd 294, 305 (4th Cir. 2012)........................................................17

*Reeves v. Sanderson Plumbing Prods., Inc* .,530 U.S. 133 (2000).......... 19

*Reyes v. Waples Mobile Home Park Ltd. P'ship.*, 903 F.3d 415, 423
  (4th Cir. 2018) ..........................................................................17

*Rhoads v. F.D.I.C.*, 257 F.3d 373 (4th Cir. 2001) ................................... 28

*Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111 (4th Cir. 2021) .. 28, 29

*Rowe v. Marley Co.*, 233 F.3d 825 (4th Cir. 2000)................................ 17

*Smith v. CSRA*, 12 F.4th 396 (4th Cir. 2021) ....................................... 29

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)............................ 18

*Strothers v. City of Laurel*, 895 F.3d 317 (4th Cir. 2018) .................... 29

*Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745
  (4th Cir. 2017) ................................................................. 25, 26

*Thomas v. Shear,* 247 Md.App.430, 447, 236 A.3d 781(2022)...............16

*Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510 (4th Cir. 2006) ................. 20

*Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir. 1989).............. 18

<u>Statutes and Rules</u>

Federal Rule of Appellate Procedure 28(a)(4)……………………………..4

Federal Rule of Civil Procedure 56 (a)............……………………………16

Maryland Rule 28(a)…………………………………………………………4

## JURISDICTIONAL STATEMENT

Pursuant to Federal Rule of Appellate Procedure 28(a)(4) and Rule 28(a), Plaintiff-Appellant Derek Chapman ("Mr. Chapman" or "Appellant") makes the following statement concerning jurisdiction.

This is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq. ("Title VII"); the Maryland Fair Employment Practices Act, Md. Code § 20-601, et seq. ("FEPA"); the Family and Medical Leave Act ("FMLA"); and 42 U.S.C. § 1983 ("Section 1983") for the Defendant's unlawful harassment, discrimination based on race (African American), color (Black), and retaliation against the Plaintiff, including, but not limited to, Defendants' unlawful and discriminatory preference and treatment, as well as retaliating against Plaintiff for his statutorily-protected activity. Accordingly, the District Court had subject matter jurisdiction of Appellant's discrimination complaint pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). This Court has jurisdiction of the appeal

4

from the final decision of the District Court pursuant to 28 U.S.C. § 1291.
The District Court issued a final Order granting summary judgment in
favor of the Appellee on July 16, 2024.

## STATEMENT OF ISSUES

1. Whether the district court improperly concluded that Appellant
   failed to establish a prima facie case of race/color discrimination
   under applicable legal standards, including *McDonnell Douglas
   Corp. v. Green*, 411 U.S. 792 (1973).

2. Whether the district court improperly concluded that Appellant
   failed to establish a prima facie case of retaliation under applicable
   legal standards, including *McDonnell Douglas Corp. v. Green*, 411
   U.S. 792 (1973).

## STATEMENT OF THE CASE

Plaintiff Derek Chapman filed his complaint on February 17, 2023,
asserting claims of Race Discrimination (Count I), Color Discrimination
(Count II), and Retaliation (Count III) under Title VII of the Civil Rights
Act; violations of the Maryland Fair Employment Practices Act (FEPA)
(Count IV); Family Medical Leave Act (FMLA) Retaliation (Count V); and

for Violation of Plaintiff's Section 1983 Civil Rights under Section 1981 of the Civil Rights Act (Section 1983) (Count VI). JA006. Upon the Defendant's briefing of a Motion to Dismiss, and Plaintiff's objection thereto, the District Court Dismissed Counts IV, V, and VI, and proceeded with Counts I, II, and III. JA003.

Parties proceeded with the exchange of discovery and at its conclusion, on May 24, 2024, Defendant filed a Motion for Summary Judgment, seeking dismissal of Plaintiff's remaining claims. JA035. Defendant argued that Plaintiff failed to establish sufficient evidence to support his claims of race and color discrimination (Counts I and II) and retaliation (Count III). Specifically, Defendant contended that Plaintiff did not meet the employer's expectations to satisfy the satisfactory performance element, citing the backlog of reports as a justification for adverse employment actions. Defendant further argued that Plaintiff failed to provide sufficient evidence of similarly situated comparators who were treated more favorably, and that Plaintiff could not establish a causal connection between his protected activity (i.e., his complaints of racial discrimination) and the adverse actions taken against him.

6

In Plaintiff's opposition, filed on June 28, 2024, Plaintiff responded by providing evidence of a pattern of discriminatory and retaliatory behavior within OSFM, highlighting how similarly situated White employees, such as Regional Commanders Jason Mowbray and John Nelson, who also had backlogs of reports, were not subjected to the same level of scrutiny, harassment, or disciplinary actions. JA283. Plaintiff also pointed to the actions of Chief Deputy State Fire Marshal Der, who allegedly retaliated against Plaintiff after he raised concerns about racial discrimination, including by contacting Plaintiff's subordinates to undermine his authority.

Plaintiff's opposition also noted that the adverse actions he faced occurred shortly after he raised concerns about racial discrimination, including a February 2021 incident where Plaintiff complained to Fire Marshal Geraci about a racially insensitive remark regarding Black History Month. Following this and other protected activities, including Plaintiff's formal complaint of discrimination in March 2021, Plaintiff was subjected to increasing scrutiny, discipline, and a hostile work environment. This culminated in his transfer in June 2021, written reprimand in August 2021, and administrative suspension in October

2021, all allegedly due to the backlog of fire origin reports—despite the fact that other White regional commanders also had similar backlogs but were not disciplined in the same way. Defendant filed its response to Plaintiff's Opposition to Summary Judgment on July 12, 2024. JA418.

On July 16, 2024, the Court issued a Memorandum Order granting Defendant's Motion for Summary Judgment, finding that Plaintiff had failed to establish the necessary elements to prove his claims of race discrimination (Count I), color discrimination (Count II), and retaliation (Count III). JA441. The Court concluded that Plaintiff did not meet the satisfactory performance element, finding that the backlog of reports was insufficient to show that Plaintiff was performing satisfactorily in his role. Additionally, the Court found that Plaintiff had not provided sufficient evidence of similarly situated comparators, noting that Plaintiff's evidence did not demonstrate that other employees with similar backlogs were treated more favorably. Lastly, the Court ruled that Plaintiff had not established a temporal proximity between his protected activity and the adverse actions taken against him, thus failing to establish a causal connection to support his retaliation claim.

Plaintiff now appeals, asserting that Defendant's actions violated Title VII by subjecting him to a hostile work environment, racial discrimination, retaliation, and wrongful adverse employment actions, including an unwarranted suspension, transfer, and other disciplinary actions. Plaintiff contends that these actions caused significant emotional, physical, and financial distress. The Defendant's discriminatory and retaliatory practices, as argued by Plaintiff, violated Title VII and the summary judgment in favor of the Defendant should be reversed.

## STATEMENT OF FACTS

Plaintiff Derek Chapman ("Plaintiff"), a dedicated employee of the Maryland Department of State Police ("MDSP") since 1998, filed a complaint on February 17, 2023, alleging race discrimination, color discrimination, and retaliation under Title VII of the Civil Rights Act of 1964 and the Maryland Fair Employment Practices Act (FEPA). JA007. Plaintiff's career at MDSP spans over 25 years, during which he achieved exemplary service, particularly with the Office of the State Fire Marshal ("OSFM"). JA009. In June 2018, Plaintiff was promoted to the position of Deputy Chief State Fire Marshal ("DCFM") and Commander of the

Northeast Region (NERO), making him the highest-ranking Black person in the Department at the time. JA271.

In his role, Plaintiff was responsible for overseeing the state's busiest region for OSFM and submitting origin and cause reports to Chief Deputy State Fire Marshal ("CDFM") Gregory Der. Throughout his tenure, Plaintiff consistently received satisfactory evaluations, highlighting his competence and leadership. JA408-411; JA417. However, the situation began to deteriorate when OSFM leaders, particularly after the promotion of Der to CDFM in 2017, began scrutinizing Plaintiff's performance more intensely, particularly with respect to a known backlog of fire origin reports. Despite Plaintiff's transparent efforts to manage the backlog, including his proposal to increase staffing to help address the issue, the Department's treatment of Plaintiff shifted. JA325-JA328.

The backlog of fire origin reports, while acknowledged as a statewide issue, became a focal point of discriminatory and retaliatory behavior toward Plaintiff, especially after he began raising concerns about racial discrimination within OSFM. JA413-414. While Plaintiff had been upfront during his interview about his personal and regional

backlog of reports, he was still promoted to Deputy Chief State Fire Marshal and Commander for NERO. JA321. His proposal to address the backlog, including increasing the number of personnel, was not considered sufficient to mitigate the increased scrutiny he would later face. It was clear that his race played a role in the heightened scrutiny, particularly as OSFM began penalizing him for the same issues that were commonplace in the Department. Notably, other White regional commanders, including Jason Mowbray and John Nelson, also had backlogs of reports but were not subjected to the same level of scrutiny or punitive measures. JA049; JA415; JA405-406.

The racial discrimination at OSFM came to the forefront in February 2021, when Plaintiff, as part of Black History Month, sent an email suggesting that OSFM recognize and celebrate Garrett Morgan, a Black inventor. JA359-360; JA374. In response, Fire Marshal Geraci made a deeply offensive comment about including "black dogs" in the celebration. JA359-360; JA374. Plaintiff found the comment racially insensitive and confronted Geraci about it, but this only escalated the tension at OSFM. JA374.

In March 2021, Plaintiff formally engaged in protected activity by raising concerns about race relations within OSFM during a meeting with Der and State Fire Marshal Geraci. JA414. During this conversation, Plaintiff reported incidents of racial discrimination, including comments made by Deputy Chiefs Duane Svites and Caryn McMahon. JA414. Svites had previously made an inappropriate comment during a staff meeting about needing a "Black driver," as if to say he preferred to have a Black person to chauffer him around in a subservient manner—while McMahon had made derogatory remarks about "lazy Black females." JA414. The result of this conversation was that Plaintiff's concerns were shared with the deputies in question, further escalating the hostile work environment. JA414.

Following Plaintiff's complaints about race discrimination, his professional environment became increasingly hostile. Der's management style shifted from one of oversight to undermining Plaintiff's authority. JA313. Der circumvented Plaintiff's position by contacting Plaintiff's subordinates directly instead of communicating with Plaintiff as the regional commander. JA313. Plaintiff's subordinates

reported these interactions, and Plaintiff advised them to document the inappropriate conduct. JA313-314; JA407.

In the wake of Plaintiff's complaints about racial discrimination, the OSFM began to take increasingly adverse actions against him. Despite his continued attempts to explain that the backlog of reports was due to the increased fire activity in NERO and insufficient resources, Plaintiff was subjected to more intense scrutiny and punitive measures. In particular, in June 2021, Plaintiff was stripped of his supervisory duties and transferred to headquarters. JA415. In August 2021, he received a written reprimand, and in October 2021, he was administratively suspended—all purportedly due to the backlog of reports. JA352-353; JA405. These actions were taken despite the fact that White male regional commanders, who also had backlogs, were not subjected to similar actions. JA049; JA415; JA405-406. Plaintiff was also denied his requests for additional support, overtime, and personnel, even as he worked tirelessly to manage the increased workload, particularly during the COVID-19 pandemic, which saw a rise in arson-related incidents. JA337-340; JA343-344.

13

Moreover, in June 2021, Plaintiff was transferred to report directly to Deputy Chief Svites, an individual with a documented history of making racist comments and exhibiting discriminatory behavior. JA348-349. Svites had previously been reported for making racially insensitive statements about Black individuals and for targeting Black businesses for after-hours inspections. JA348-349. Svites' treatment of Black employees, including his remarks about needing a "Black driver," contributed to an atmosphere of racial hostility. JA348-349. Even more flagrant, Svites circulated an altered photograph of Joe Biden with cornrows, captioned "it is only a matter of time," further exacerbating the toxic culture with OSFM. JA383; JA412. Plaintiff's reassignment to Svites further compounded the retaliatory environment Plaintiff was facing.

In October 2021, Plaintiff was subjected to public embarrassment when OSFM uniformed deputies arrived unannounced at his home to recover his service equipment following his suspension. JA355. This action suggested Plaintiff was a safety risk, further stigmatizing him and violating OSFM policies regarding the manner in which suspensions are handled. JA395-396. Despite his reinstatement in March 2022, Plaintiff

14

continued to face harassment and retaliation, with his professional reputation and mental well-being suffering as a result.

In February 2023, while on Family and Medical Leave Act (FMLA) leave, Plaintiff received an unsatisfactory performance evaluation. This evaluation was in stark contrast to his previous satisfactory reviews and further demonstrated the ongoing retaliation Plaintiff was facing due to his complaints about discrimination and retaliation. Comparatively, other similarly situated employees, particularly White male colleagues, were not subject to similar adverse actions. JA049; JA415; JA405-406.

Plaintiff contends that the actions of the Defendant, including racial discrimination, color discrimination, retaliation, and the subsequent adverse employment actions taken against him, were unlawful and violated Title VII. Despite presenting evidence of a pattern of discriminatory and retaliatory behavior, Plaintiff was unjustly subjected to disciplinary actions, a hostile work environment, and unequal treatment compared to similarly situated employees. Plaintiff respectfully requests that this Court reverse the decision granting summary judgment and remand the case for further proceedings.

## SUMMARY OF THE ARGUMENT

The district court improperly concluded that Appellant failed to establish a prima facie case of race discrimination as Appellant adduced evidence of satisfactory job performance and disparate treatment. The district court improperly concluded that Appellant failed to establish a prima facie case of retaliation as Appellant sufficiently met the non-onerous standard of showing a causal connection between complaining of discriminatory behavior and being reprimanded, reassigned, and suspended. The district court ultimately erred in granting summary judgment in favor of Appellee by failing to view the evidence in the light most favorable to Appellant and improperly resolving disputed issues of material fact.

## STANDARD OF REVIEW

Generally, an appellate court reviews a lower court's order for summary judgment *de novo*, without deference to the lower court's decision. *Thomas v. Shear*, 247 Md. App. 430, 447, 236 A.3d 781 (2020). Summary judgment is appropriate only when there are no material facts in dispute, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When conducting the review of the

16

pleadings for a summary judgment proceeding, the court is to assume all "well-pled facts to be true," and "draw all reasonable inferences in favor of the plaintiff." d*e Reyes v. Waples Mobile Home Park Ltd. P'ship, 903 F.3d 415, 423 (4*th Cir. 2018); *Lee v. Town of Seaboard*, 863 F. 3d 323, 327 (4th Cir. 2017). The court shall not weigh the evidence or make credibility determinations as these functions are of the jury, not the judge ruling on a motion for summary judgment. *See Ray Communs, Inc. v. Clear Channel Communs, Inc.*, 673 F.3d 294, 305 (4th Cir. 2012); *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991).

## ARGUMENT TO VACATE ORDER OF SUMMARY JUDGMENT

I. **The district court improperly concluded that Appellant failed to establish a prima facie case of race discrimination under applicable legal standards, including *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).**

To survive a motion for summary judgment, a plaintiff must show a *prima facie* case and evidence of pretext that raises a sufficient inference of discrimination. *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 854 (4th Cir. 2001); *see also Rowe v. Marley Co.*, 233 F.3d 825, 830 (4th Cir. 2000). Moreover, on a motion for summary judgment, the plaintiff need not prove discrimination or retaliation; rather, the court need only

find that a reasonable jury could return a verdict for plaintiff. *See Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 959 (4th Cir. 1996). Here, Appellant presented evidence of a prima facie case of racial discrimination in a way sufficient for a reasonable jury to return a verdict for Appellant. Therefore, Appellee was not entitled to judgment as a matter of law.

>    a. **Plaintiff established a prima facie case for race discrimination in violation of Title VII (Counts I and II).**

Racial discrimination claims under Title VII can be established by either direct or indirect evidence. Where the plaintiff lacks direct evidence of discrimination, racial discrimination claims under Title VII are subject to the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* burden-shifting framework, the plaintiff in a discrimination or retaliation case must first establish a *prima facie* case. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir. 1989). To establish a *prima facie* case of racial discrimination under Title VII, Plaintiff needs to demonstrate that: (1) he is a member of a protected class; (2) he performed at a satisfactory level; (3) he suffered an adverse employment action; and (4) he

experienced different treatment from that of a similarly situated individual outside his protected class. *See Perkins v. Int'l Paper Co.*, 936 F.3d 196 (4th Cir. 2019). Once the plaintiff makes this prima facie showing, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse decision. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *McDonnell Douglas*, 411 U.S. at 802–03.

Two elements of the prima facie case have been conceded as Appellee admits Appellant is a member of a protected class (Black/African-American) and suffered an adverse employment action (reassignment/suspension/termination). Appellee contends that Appellee did not meet the remaining two standards: that he performed at a satisfactory level and that he experienced different treatment from that of a similarly situated individual outside his protected class. The lower court agreed that Appellant did not establish satisfactory job performance or disparate treatment compared to similarly situated employees. We take each of these elements in turn to show why there is viable evidence of disputes of material fact that make summary judgment inappropriate in this case.

### i. Appellant established satisfactory job performance at the time of the time of his suspensions considering the backlogs were statewide, and not unique to Appellant.

As part of a prima facie showing of a discriminatory claim, a plaintiff must show that he was satisfactorily performing his job at the time of the suspension or termination. *See Hoyle v. Freightliner, LLC,* 650 F.3d 321, 336 (4th Cir. 2011). Such a showing of satisfactory performance does not require the plaintiff to show that he was a perfect or model employee. Rather, a plaintiff must show only that he was qualified for the job and that he was meeting his employer's legitimate expectations. *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 515-16 (4th Cir. 2006).

The lower court found that Appellant was unable to sufficiently demonstrate that he was meeting his employer's legitimate expectations when he suffered an adverse employment action. The lower court based this decision off Appellant having a backlog of reports at the time he was suspended. However, the backlog of reports was acknowledged as a statewide issue, not one unique to Appellant. JA388-389. Additionally, Appellant did not claim to be a perfect employee and in fact had been upfront during his interview about his personal and regional backlog of

reports, he was still promoted to Deputy Chief State Fire Marshal and Commander for NERO. JA103-104. The backlog did not become an issue until Appellant began raising concerns about racial discrimination within OSFM. JA321. Prior to Appellant raising concerns and throughout his tenure, Plaintiff consistently received satisfactory evaluations, highlighting his competence and leadership. JA408-411; 417. Even with a backlog, in June 2018, Plaintiff was promoted to the position of Deputy Chief State Fire Marshal ("DCFM") and Commander of the Northeast Region (NERO), making him the highest-ranking Black person in the Department at the time. JA271. As evidenced by his promotions and evaluations, Appellant was performing more than satisfactorily and was more than qualified for the positions he held.

   ii. **Appellant established disparate treatment amongst himself and his similarly situated white counterparts.**

   As part of a prima facie showing of a discriminatory termination claim, a plaintiff must show that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of other employees outside the protected class who received less severe discipline. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011). This Court has emphasized that a comparison between similar employees "will never

21

involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances." *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993). Rather, to establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator "dealt with the same supervisor, were subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

The lower court found that Appellant could not show any examples of comparators who engaged in similar misconduct and received better treatment. The lower court acknowledged that Appellant had provided evidence of comparators but reasoned that Appellant had argued vaguely and did include information about when these people served in OSFM, who supervised them, or the nature and extent of their report backlogs. The lower court reasoned that they could not find that the similarities were meaningful, considering Appellee's contentions that Appellant's backlog was longer than any of the listed comparators.

In *Haynes v. Waste Connections, Inc.*, a non-white employee produced evidence that a white employee with the same supervisor, had several workplace infractions, 922 F.3d 219 (4th Cir. 2019). The non-white employee produced evidence that the white employee was permitted to return to his job, and the non-white employee, who had fewer infractions and did not yell at his supervisor, was not permitted but instead terminated. *Id.* at 222. The appellate court cited *Cook v. CSX Transp. Corp.* and reasoned that considering this evidence, a reasonable fact finder could conclude that the two employees were appropriate comparators, because they dealt with the same supervisor, were subject to the same standards, and engaged in similar conduct, 988 F.2d 507, 511 (4th Cir. 1993); *See Haynes,* 922 F.3d 219, 223. The employer had argued that the two were not sufficient comparators due to the difference in seriousness of the infractions committed by the two employees. *See Haynes,* 922 F.3d 219, 224. The appellate court ultimately reasoned that even if one's infractions were more serious, this fact alone would not necessarily end the comparator analysis and a factfinder could reasonably determine that the two were proper comparators. *Id.* The appellate court held that because the two employees were similar in all

relevant respects but the non-white employee was treated differently from the white employee, the district court erred in holding that the non-white employee had failed to establish a proper comparator. *See Id.* at 225.

Similarly here, Appellant has produced evidence that numerous white employees with the same supervisor as he, have backlogs. Specifically, Jason Mowbray and John Nelson, White regional commanders, also had backlogs of reports but were not subjected to the same level of scrutiny or punitive measures. JA049; JA415; JA405-406. In fact, Appellant has submitted evidence showing that the backlog of cases is a statewide issue due to the increased fire activity in NERO and insufficient resources. Appellant has submitted evidence showing that the backlog and other issues were commonplace in the Department, though Appellant received heightened scrutiny and more punitive measures than his white counterparts. JA049; JA415; JA405-406. Appellant has proven that though of another race, the other employees held similar positions and were subject to the same standards. Therefore, Appellant has shown that Jason Mowbray and John Nelson are valid

24

comparators who engaged in similar misconduct and received better treatment. *See Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010).

In *Swaso v. Onslow Cty. Bd. of Educ.*, an employee alleged that unlike her, some white teachers were permitted to return to work with more severe restrictions or medical conditions, and that some white employees were permitted to return with similar standing restrictions, 698 F. App'x 745 (4th Cir. 2017). The Court reasoned that beyond these bare allegations, Swaso failed to provide any factual enhancement regarding the alleged comparators that would permit the court to reasonably infer their similarity. *Id.* at 749. The Court ultimately held that absent further factual development, Swaso fell short of alleging facts from which to reasonably infer that their difference in treatment was attributable to racial discrimination and raise her right to relief above the speculative level. *Id.*

Here, Appellant alleges facts far more specific than mere speculation. Appellant has provided examples of when he was treated differently than his white counterparts despite engaging in similar conduct now conveniently categorized by Appellee as misconduct though commonplace in the Department. Unlike the bare allegations in *Swaso*,

25

here Appellant has also provided evidence of the rationale or pretext behind the discriminatory behavior. Including evidence of racial discrimination at OSFM dating back to February 2021, when Appellant as part of Black History Month, sent an email suggesting that OSFM recognize and celebrate Garrett Morgan, a Black inventor as part of Black History Month and was met with deeply offensive comments about including "black dogs" in the celebration. JA359-360; JA374. Appellant also adduced evidence of attempts to report racial discrimination at meetings, including pointing to examples of Deputy Chiefs making inappropriate comments about needing a "Black driver," as if to say he preferred to have a Black person to chauffer him around in a subservient manner and derogatory remarks about "lazy Black females." JA348-349; JA414. Unlike the Plaintiff in *Swaso*, here Appellant has alleged facts from which to reasonably infer that the difference in Appellant's treatment was attributable to racial discrimination and raises his right to relief far above a mere speculative level.

Therefore, Appellant has provided viable evidence of disputes of material fact that make summary judgment inappropriate in this case. Appellee conceded the first two elements of the prima facie case, that

Appellant is a member of a protected class (Black/African-American) and suffered multiple adverse employment actions (reassignment/ suspension/ termination). Appellant has shown that he performed at a satisfactory level evidenced by his promotions and that he experienced different treatment from that of a similarly situated individual outside his protected class in showing that he was disciplined more severely than his white counterparts over statewide issues that were commonplace in the Department. Appellant has presented a prima facie case and evidence that raises a sufficient inference that a reasonable jury could return a verdict for Appellant, making summary judgment inappropriate in this case.

II. **The district court improperly concluded that Appellant failed to establish a prima facie case of retaliation under applicable legal standards, including** *McDonnell Douglas Corp. v. Green*, **411 U.S. 792 (1973).**

Retaliation claims under Title VII are governed by the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Plaintiff may establish a *prima facie* case of retaliation by showing that: (1) he engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) a causal link exists between the protected activity and the adverse employment action.

27

*Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021); *See also Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001). Two elements of the prima facie case have been conceded as Appellee admits Appellant engaged in protected activity (expressed concern about discriminatory actions) and suffered an adverse employment action (reassignment/ suspension/ termination). However, Appellee contends that Appellant did not meet the remaining standard: that a causal link exists between the protected activity and the adverse employment action. The lower court agreed that Appellant could not show that the protected activity occurred close enough in time to his transfer, suspension, investigation or discipline to allow for an inference of racial animus. We address this element below showing there is viable evidence and disputes of material fact that make summary judgment inappropriate on Appellant's retaliation claim.

> **b. Appellant established a causal link between his protected EEO activity and the numerous adverse actions targeted at him.**

Causation may be inferred when the adverse action follows close in time to the protected activity. *See Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 126 (4th Cir. 2021). Employer actions are sufficiently "adverse"

if they would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006); *Cole v. Family Dollar Stores of Md., Inc.*, 811 Fed. Appx. 168 (4th Cir. 2020) ("the employer's knowledge coupled with an adverse action taken at the first opportunity satisfies the causal connection element of the prima facie case."). Showing a causal relationship at the *prima facie* state, however, is "not an onerous burden." *Strothers v. City of Laurel*, 895 F.3d 317, 335 (4th Cir. 2018); *Smith v. CSRA*, 12 F.4th 396, 417 (4th Cir. 2021). Establishment of a *prima facie* case of retaliation only requires "very little evidence of causal connection." *Roberts*, 998 F.3d at 127 (4th Cir. 2021) (citing *Burgess v. Bowen*, 466 F. App'x 272, 283 (4th Cir. 2012)).

The lower court held that Appellant could not show that the protected activity occurred close enough in time to his transfer, suspension, investigation or discipline to allow for an inference of racial animus. The lower court specifically reasoned that three-months from Appellant complaining to his transfer was too attenuated a timeframe to give rise to an inference of racial animus. Appellee in turn argues that all adverse actions taken against Appellant were due to his failure to

complete reports, not due to retaliation for engaging in protected activity. We have already debunked Appellant's claim that these actions were taken due to the failure to complete reports by showing that other non-black employees had backlogs though were not transferred or reprimanded in the way Appellant was. We will now show that there is sufficient evidence in the record to prove a causal relationship between Appellant's complaints and his mistreatment and subsequent transfer.

In *Alberti v. Rector and Visitors of the Univ. of Va.*, an employee attempted to rely on this Court's holding in *Lettieri* to establish a causal connection, 65 F.4th 151 (4th Cir. 2023). In *Lettieri v. Equant Inc.*, the Court held that evidence of numerous instances of abuse from a plaintiff's direct supervisor that coincided with her loss of responsibilities and ultimately her loss of employment overcame a seven-month gap between her last discrimination report and her termination, 478 F.3d 640, 643-46 (4th Cir. 2007). However, the *Alberti* court held that even accepting the facts in that plaintiff's complaint and all reasonable inferences from them as true, the handful of comments made about the plaintiff's national origin were spread out over more than four years. And the comments made after the plaintiff reported the supervisor were neither numerous

nor continuous. Thus, the *Alberti* court ultimately held that the complaints were not causally connected to the adverse action.

Here, like in *Lettieri* and unlike in *Alberti,* Appellant has adduced evidence of much more than a handful of instances of abuse from his direct supervisors that coincide with his transfers. In March 2021, Appellant formally engaged in protected activity by raising concerns about race relations within the Department. JA414. By June 2021, Appellant had been stripped of his supervisory duties and transferred to headquarters. JA415. By August 2021, Appellant had received a written reprimand and by October 2021, Appellant had been administratively suspended. JA416. From March to October, Appellant not only dealt with these adverse actions but numerous instances of abuse and mistreatment including his concerns being shared with the same deputies making the derogatory comments and subsequent assignment to those deputies despite their marked history of discriminatory behavior. JA346-350. During this time, Department leaders repeatedly undermined and embarrassed Appellant publicly and privately by usurping Appellant's interactions with subordinates and showing up to Appellant's home following his suspension. JA355-356. Even after Appellant had returned

31

from suspension, Appellant was subject to mistreatment after receiving an unsatisfactory performance evaluation while on Family and Medical Leave Act leave in February 2023. Therefore, as in *Lettieri,* Appellant has overcome the months long gap in time between his last complaint and his transfer by showing there were numerous and continuous instances of mistreatment that establish a sufficient connection between Appellant's complaints and his transfer. Appellant has sufficiently met the burden which was not meant to be onerous. *Strothers*, 895 F.3d at 335. Therefore, Appellant has presented evidence of a prima facie case of retaliation and Appellee was not entitled to judgment as a matter of law.

## CONCLUSION

The district court ultimately erred in granting summary judgment in favor of Appellee by failing to view the evidence in the light most favorable to Appellant and improperly resolving disputed issues of material fact. The district court improperly concluded that Appellant failed to establish a prima facie case of race discrimination as Appellant adduced evidence of satisfactory job performance and disparate treatment. The district court improperly concluded that Appellant failed to establish a prima facie case of retaliation as Appellant sufficiently met

the non-onerous standard of showing a causal connection between complaining of discriminatory behavior and being reprimanded, reassigned, and suspended.

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,236 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14pt. and Century.

Respectfully Submitted,

Dionna Maria Lewis, Esq.
District Legal Group, PLLC
700 Pennsylvania Ave SE, Suite 2098
Washington, DC 20003
Mob. (202) 486-3478

33

Fax (202) 618-6187
Dionna@DistrictLegalGroup.com
*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of February 2025, I originally electronically filed the Appellant Brief with the Clerk of the Court using the CM/ECF system, and on this 18th day of February 2025, I electronically filed the foregoing corrected Appellant Brief with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following counsel of record:

Kyle A. Ashe
Assistant Attorney General
Office of the Attorney General
Maryland State Police Division
1201 Reisterstown Road,
Bldg. A, First Floor
Baltimore, Maryland 21208
(p) 410-653-4246
(c) 410-627-1189
kyle.ashe@maryland.gov

Phillip M. Pickus
Principal Counsel
Office of the Attorney General
Maryland State Police
1201 Reisterstown Road
Baltimore, Maryland 21208
(p) 410-653-4293

(c) 410-653-4270
phillip.pickus@maryland.gov

Dionna Maria Lewis, Esq.
District Legal Group, PLLC
700 Pennsylvania Ave SE, Suite 2098
Washington, DC 20003
Mob. (202) 486-3478
Fax (202) 618-6187
Dionna@DistrictLegalGroup.com
*Counsel for Plaintiff-Appellant*

35